**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM E. SHEA,                          :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :  Civil Action No. 02-0577 (JR)
                                          :
CONDOLEEZZA RICE, Secretary of            :
State,                                    :
                                          :
          Defendant.                      :

### MEMORANDUM

          The single surviving claim in this case by the *pro se*
plaintiff, William Shea, invoking Title VII of the Civil Rights
Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Equal Protection
clause of the Fifth Amendment, U.S. Const. amend V, is that he
has been underpaid for the last sixteen years because of his
race - white.  Before the court is a renewed motion for summary
judgment that focuses on the correct application of the Supreme
Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550
U.S. --, 127 S.Ct. 2162 (2007) which was handed down after the
Court of Appeals decided that Shea could base his claim on "each
paycheck that he received within the statute of limitations
period and thereafter." *Shea v. Rice*, 409 F.3d 448, 449 (D.C.
Cir. 2005).  The motion must be granted.

**Background**

          The facts are undisputed.  Shea is a white male of
Irish descent who has been employed in the Foreign service since

May 1992.  Dkt. 1 at ¶ 3.  He was hired at a time when the State Department was using a mid-level placement program that sought to promote workforce diversity by assigning more senior pay grades to entry-level American Indians, Alaskan natives, Asians, Pacific Islanders, Blacks and Hispanics with certain qualifications. Def. MSJ, ex. 3.  Shea knew when he was hired that several such "minorities" were paid salaries higher than his.  Def. MSJ at 1, ex. 5.  The State Department terminated the mid-level placement program on or about February 4, 1993.  Def. MSJ., ex. 9.

On July 11, 2001 Shea filed a grievance with the State Department asserting, among other things, racial discrimination in violation of Title VII because of the disparate pay he was then (still) receiving.  Def. MSJ at 1.  The State Department failed to act within 90 days, and Shea complained to the Foreign Service Grievance Board.  The Foreign Service Grievance Board dismissed his complaint, Def. MSJ at 2, and he filed suit in this Court, Dkt. 1.  I dismissed Shea's claims for failure to state a claim upon which relief could be granted.  Dkt. 15; 16.  Shea appealed only my ruling that his Title VII claim was untimely. Dkt. 17.  The Court of Appeals reversed that ruling and remanded, Dkt. 19, agreeing with Shea that "each paycheck that he received within the statute of limitations period and thereafter constitutes a discrete discriminatory act." *Shea v. Rice*, 409 F.3d 448, 449 (D.C. Cir. 2005).

Upon remand, I referred the case to a magistrate for possible settlement, which never materialized.  Dkt. 24; 27. Then, in May 2007, the Supreme Court handed down its decision in *Ledbetter*, holding that "a new Title VII violation does not occur and a new charging period is not triggered when an employer issues paychecks pursuant to a system that is facially non-discriminatory and neutrally applied." *Ledbetter*, 127 S.Ct. at 2174.  In reliance upon this new authority, the government filed a Rule 12(c) motion for judgment on the pleadings, essentially arguing that *Ledbetter* had overruled *Shea v. Rice*.  Dkt. 36.  I denied that motion but invited a motion for summary judgment after the factual record was developed.  Dkt. 43.  The government accepted this invitation, and in their motion for summary judgment again argued that *Ledbetter* is dispositive of Shea's claim.  Dkt. 46.  Shea filed an opposition and a cross-motion for partial summary judgment, claiming that he would have been accepted to the mid-level placement program had it not been racially discriminatory, and that his pay during and since the charging period would therefore have been greater than in fact it was.  Dkt. 51.

**Analysis**

Under 22 U.S.C. §§ 4134(a) & (c)(1) an individual has 180 days from an act of alleged discrimination to file a grievance with the Foreign Service Grievance Board.  It is

undisputed that Shea was hired in May 1992, that the allegedly discriminatory mid-level placement system was disbanded in 1993, and that Shea filed his grievances in 2001.

The question presented by this motion is whether *Ledbetter* has resurrected the Secretary's statute of limitations defense after its rejection by the Court of Appeals.  Lilly Ledbetter received lower pay than her male co-workers because of various discrete discriminatory adverse actions, including denials of raises, that were all time-barred.  *Id.* at 2166.  It was undisputed that each paycheck she received would have been larger but for the discriminatory conduct, but the Supreme Court declined to find that each paycheck was a "separate act of discrimination" that "carried forward intentional discriminatory disparities from prior years," reasoning that "[a] disparate-treatment claim comprises two elements: an employment practice, and discriminatory intent," and that to adopt Ledbetter's "carry-forward" theory would "jettison the defining element of the legal claim on which her Title VII claim was based."  *Id.* at 2167. Ledbetter's argument impermissibly "gave present effect to discriminatory conduct outside of [the charging] period" because it "would shift intent from one act (the act that consummates the discriminatory employment practice) to a later act that was not performed with bias or discriminatory motive . . . [and t]he effect of this shift would be to impose liability in the absence

of the requisite intent." *Id.* at 2169, 2170.  Because Ledbetter did not present any other evidence of "actual discriminatory intent" with the issuance of each paycheck, her claim failed. *Id.* at 2167.

The government argues that *Ledbetter* is dispositive of this case because the State Department did not apply a facially discriminatory pay system to Shea within the charging period, and because the lower pay that he complains about is merely the effect of uncharged discrimination which the Secretary has no duty to rectify.  Def. MSJ at 3-9; *Ledbetter*, 127 S.Ct. 2174. Shea responds by attempting to distinguish the facts and holding of *Ledbetter*.  He argues that because the Foreign Service used a facially discriminatory pay system when he was hired, his case falls under the rule in *Bazemore v. Friday*, 478 U.S. 385 (1986), which *Ledbetter* "simply reaffirmed . . . as the D.C. Circuit understood and applied it in *Shea v. Rice*."  Pl. MSJ at 25.

The *Shea v. Rice* panel held that Shea's claim was not time barred because, if true, his allegations that "as a consequence of the racially discriminatory diversity program [the State Department] operated [at the time of his hiring], he receiv[es] less pay with each paycheck than [he] would be [receiving] if [he] had not been discriminated[ ] against," *Shea v. Rice*, 409 F.3d at 452, would establish the continuation of a "persistent discriminatory salary structure," *id.* at 453, under

which each paycheck in the charging period was actionable as a
"discrete discriminatory act," *id.* at 455.  The fact that the
Secretary had not "corrected" Shea's paygrade to a non-
discriminatory level was enough to make the issuance of each
disparate paycheck actionable discrimination as a "periodic
implementation" of the facially discriminatory 1992 hiring
policy, even though that policy had been dismantled years before
and had not been applied to Shea since 1992.  *Id.* at 455.  *Shea
v. Rice* thus held that, unless the effects of a former facially
discriminatory pay system are rectified, "the law <u>imputes</u> current
discriminatory intent to the employer with each paycheck it
issues."  Pl. MSJ at 25 (emphasis added).

That holding, and Shea's argument, cannot be
successfully distinguished from the "paycheck accrual rule" that
Ledbetter argued for and that the Supreme Court rejected because
it "dispensed with the need to prove <u>actual</u> discriminatory intent
in pay cases."  *Ledbetter*, 127 S.Ct. at 2172 (emphasis added).[1]

Plaintiff fares no better with his argument that this
case is controlled by *Bazemore* rather than *Ledbetter*.  *Bazemore*
was a case that:

> concerned a disparate-treatment pay claim brought
> against the North Carolina Agricultural Extension
> Service (Service).  Service employees were originally

---

[1]This impermissible imputation of intent was why the
*Ledbetter* court cited *Shea v. Rice* as conflicting with the
Eleventh Circuit's decision below.  *Ledbetter*, 127 S.Ct. at 2166.

> segregated into "a white branch" and "a Negro branch,"
> with the latter receiving less pay, but in 1965 the two
> branches were merged. After Title VII was extended to
> public employees in 1972, black employees brought suit
> claiming that pay disparities attributable to the old
> dual pay scale persisted.

*Ledbetter*, 127 S.Ct. 2172 (internal citations omitted).  The
Supreme Court held that the plaintiffs could recover on their
paychecks in the charging period, even though the initial
discriminatory system was created before 1972, because the then
current system was a "mere continuation" of the prior facially
discriminatory scheme.  *Id.* at 2173.

But *Bazemore* does not "stand[] for the proposition that
an action not comprising an employment practice and alleged
discriminatory intent is separately chargeable, just because it
is related to some past act of discrimination."  *Id.* at 2174.
*Bazemore*, like *Ledbetter*, requires both the act of discrimination
and continuing intent.  Thus:

> when an employer adopts a facially discriminatory pay
> structure that puts some employees on a lower scale
> because of race, the employer engages in intentional
> discrimination whenever it issues a check to one of
> these disfavored employees. An employer that adopts <u>and
> intentionally retains</u> such a pay structure can surely
> be regarded as intending to discriminate on the basis
> of race as long as the structure is used.

*Id.* at 2174 (emphasis added).  "In other words, a freestanding
violation may always be charged within its own charging period
regardless of its connection to other violations."  *Id.* at 2174.

The *Bazemore* defendants were liable because of their "continued use of a <u>racially explicit</u> base wage." *Id. at* 2174 fn. 6 (emphasis added). Although the evidence of actual intent relied on by the *Bazemore* Court has not been identified, the *Ledbetter* Court found that the *Bazemore* "plaintiffs were alleging that the defendants ha[d] not from the date of the Act forward made all their employment decisions in a wholly nondiscriminatory way . . . which is to say that <u>they had engaged in fresh discrimination</u>." *Id.* at 2173 (emphasis added) (internal citation omitted). Therefore "the focus in *Bazemore* was on a current violation, not the carrying forward of a past act of discrimination," *id*. at 2174 fn. 5, and its holding, "consistent with [*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)]," *id.* at 2174, "in no sense g[ave] legal effect to [unchargeable pre-1972] actions," *id.* at 2173 (emphasis added).

In *Evans*:

> [The Plaintiff] was forced to resign because [her employer] airline refused to employ married flight attendants, but she did not file an EEOC charge regarding her termination. Some years later, the airline rehired her but treated her as a new employee for seniority purposes.  Evans then sued, arguing that, while any suit based on the original discrimination was time barred, the airline's refusal to give her credit for her prior service gave present effect to [its] past illegal act and thereby perpetuate[d] the consequences of forbidden discrimination.

*Ledbetter*, 127 S.Ct. at 2169 (internal citations and quotations omitted).  The *Evans* Court "did not take the airline's

discriminatory intent in 1968, when it discharged the plaintiff because of her sex, and attach that intent to its later act of neutrally applying its seniority rules," *id.* at 2170, and therefore "concluded that the continuing effects of the precharging period discrimination did not make out a present violation," *id.* at 2168.  The *Ledbetter* Court relied heavily on *Evans* in its refusal to impute actual intent from time barred acts into the charging period, noting that "[i]n [Evans] we rejected an argument that is basically the same as Ledbetter's." *Id.* at 2167.

In this case it is undisputed that the Secretary dismantled the Foreign Service mid-level placement program in 1993.  Shea has adduced no evidence other than his paychecks to prove that the pay system applied to him in the chargeable period was anything other than facially nondiscriminatory and neutrally applied.  *Ledbetter*, 127 S.Ct. at 2174.  Shea has offered no other further evidence of "actual" discriminatory intent by the Secretary in the charging period.  His claim is therefore time barred, and summary judgment must be granted to the defendant.

An appropriate order is issued with this memorandum.


JAMES ROBERTSON
United States District Judge


- 9 -