## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **WILLIAM E. SHEA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )     **Civil Action No. 02-577 (RCL)** |
| **HILLARY CLINTON, Secretary,** | ) |
| **Department of State,** | ) |
| | ) |
| **Defendant.** | ) |
|_____| ) |

## MEMORANDUM OPINION

Before the Court are defendant's Motion for Reconsideration [93] and plaintiff's Motion for Reconsideration of Four Matters [85] ("Shea Mot. Recons."). Each party requests reconsideration of the Court's denial of cross-motions for summary judgment, and each party requests reconsideration of part of the Court's order granting defendant's Motion for Leave to File and denying defendant's Motion to Strike. *See generally* Aug. 11, 2009 Mem. Order [69]; Feb. 2, 2010 Order [78]. At an April 6, 2011 status hearing, Judge Sullivan[1] stayed the proceedings until defendant's Motion for Reconsideration was fully briefed and addressed by the Court. Subsequently, plaintiff's Motion of Application of Judicial Estoppel to Defendant's Rule 56(f) Motion ("Estoppel Motion") [106], defendant's Consent Motion to Enlarge Time to Respond [107], and plaintiff's Motion for Clarification [108] were filed. Upon consideration of the parties' motions and supporting briefs, as well as the record upon which the original orders were based, the court will deny each party's Motion for Reconsideration, will grant defendant's

---

[1] This case was most recently reassigned by consent from Judge Sullivan to Chief Judge Lamberth on October 7, 2011. Reassignment of Civil Case [105]. Previously the case had been randomly reassigned from Judge Robertson to Judge Kennedy on June 4, 2010, and then randomly reassigned to Judge Sullivan on June 30, 2010. Reassignment of Civil Case [80]; Reassignment of Civil Case [83].

Consent Motion to Enlarge Time to Respond, and will deny plaintiff's Motion for Clarification as moot.

## I.     BACKGROUND

This case is a long-running employment discrimination case in which Mr. William Shea ("Shea") alleges that the State Department ("State") violated his rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e *et seq.*).  *See generally* Compl. [1].

### A. Basis for the Complaint

State's Mid-Level Minority Hiring Program ("MLAAP") was in force when Shea was hired in 1992.  *See* Mem. P. & A. Supp. Def.'s Mot. Recons. ("State Recons. P. & A.") at 3 (noting that the MLAAP ran from 1987 to 1993).  Mid-level hiring allowed a Foreign Service candidate to be hired directly into a higher grade rather than into an entry-level grade.  *See* Def.'s Mot. Summ. J. ("State MSJ") [46] Statement of Material Facts Not in Genuine Dispute ("State Mat. Facts") ¶ 6.  Mid-level hiring required either a "certification of need" that an outside hire was required, or membership in one of a set of specified minority groups under the MLAAP.[2] *See id.* ¶ 7.   Candidates for mid-level hiring were also required (a) to have substantial professional experience, (b) to receive a passing grade on an oral examination, and (c) to pass a background check.  *See id.* ¶ 8.  Shea alleged that he would have passed the screening process but was excluded from consideration for mid-level hiring solely on the basis of his race, as there was no certification of need.  *See* Compl. ¶ 6.  Specifically, Shea alleged harm because his hiring at entry-level rather than mid-level has subjected him to lower pay and fewer promotion opportunities than members of minority groups admitted under the MLAAP, on an ongoing

---

[2] State's Motion for Reconsideration states that the MLAAP required both a certification of need and minority status.  *See* State Recons. P. & A. at 3.  However, State's Statement of Material Facts and its supporting exhibits are clear that members of specified minorities were exempt from the formal certification of need under the MLAAP.  It may be that the Motion for Reconsideration was referring to mid-level hiring in general and that reference to the MLAAP in this context was inadvertent.

basis, in violation of his rights under Title VII.  *See id.*  Shea also alleged constitutional violations, but the Court dismissed that claim, and Shea did not appeal the dismissal, State Recons. P. & A. at 8 n.5, so the Title VII claim is the only one before the Court.

### B.  Procedural History

The Court originally granted State's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that the statute of limitations had expired.  *See* Sept. 30, 2003 Order [15]; Sept. 30, 2003 Mem. [16].  On appeal, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded.  *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005) (holding that each time an employer pays an employee less than another for a discriminatory reason, that pay event is a discrete discriminatory event with its own statute of limitations).

In light of the Supreme Court's subsequent decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which brought the D.C. Circuit's analysis into question, this Court granted State's Motion for Summary Judgment.  Nov. 21, 2008 Order [64]; Nov. 21, 2008 Mem. [63].  While this case was again on appeal, Congress passed the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009), which abrogated the Supreme Court's holding in *Ledbetter*.  The D.C. Circuit remanded for reconsideration in light of the intervening change of law.  *Shea v. Clinton*, No. 08-5491, 2009 WL 1153448, at *1 (D.C. Cir. Apr. 2, 2009). This Court then denied the remaining portions of both parties' Motions for Summary Judgment. Aug. 11, 2009 Mem. Order [69].  State's subsequent Motion for Reconsideration was denied. Aug. 20, 2009 Order [71].

The parties have been in discovery since that time. Shea filed a new Motion for Summary Judgment[3] [74] and a subsequent Motion for Reconsideration [85] of the denial of his original Motion for Summary Judgment. On March 9, 2011, Judge Sullivan stayed proceedings in this case pending a status hearing on April 6, 2011, at which the parties were to address Shea's Motion for Reconsideration and answer the Court's questions regarding discovery. On April 5, 2011, State filed a second Motion for Reconsideration [93] of the denial of their Motion for Summary Judgment. At the April 6, 2011 hearing, Judge Sullivan extended the stay pending the parties fully briefing State's Motion for Reconsideration. *See* Apr. 8, 2011 Minute Order. The parties' motions for reconsideration and the subsequent motions filed after the stay are now before the Court.

## II.   STANDARD OF REVIEW

### A.  Legal Standard

Both of the parties' motions for reconsideration request that the Court reevaluate its earlier interlocutory orders pursuant to Federal Rule of Civil Procedure 54(b). State Recons. P. & A. at 1; Shea Mot. Recons. at 1. A court's interlocutory orders "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[R]elief upon reconsideration . . . pursuant to Rule 54(b) is available 'as justice requires.'" *Hoffman v. Dist. of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)). Although Rule 54(b) provides the court with significant discretion, "in order to promote finality, predictability and economy of judicial

---

[3] Shea's earlier filing [51] was entitled "Plaintiff's Opposition to Defendant's Motion for Summary Judgment, and Cross-Motion for Partial Summary Judgment," while the later filing is entitled "Plaintiff's Motion for Summary Judgment." In ruling on the earlier cross-motions, Judge Robertson noted "Shea asserts that his cross-motion is for 'partial' summary judgment, but it seems to seek across-the-board relief." Aug. 11, 2009 Mem. Order [69] at 2 n.1. Shea notes in his Motion for Summary Judgment that it is not a request for reconsideration of the earlier denial, but does not address Judge Robertson's note. Pl.'s Mem. P. & A. [74-2] at 1 n.1. Because Shea's Motion for Summary Judgment is not yet fully briefed and hence not yet before the Court, this discrepancy is simply noted.

resources, 'as a rule [a] court should be loathe to [revisit its own prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009) (quoting *Lederman v. United States*, 539 F. Supp. 2d 1, 2 (D.D.C. 2008)).   Clear errors of law are grounds for reconsideration of a prior order.  *See Nat'l Ctr. for Mfg. Sciences v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000).   "Reconsideration may be warranted where there was a patent misunderstanding of the parties, where a decision was made that exceeded the issues presented, where a court failed to consider controlling law, or where a significant change in the law occurred after the decision was rendered.  The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied."  *Pueschel*, 606 F. Supp. 2d at 85 (internal citations omitted).

### B.  Application of the Legal Standard

Both parties filed their motions for reconsideration after this case was transferred from Judge Robertson to Judge Sullivan.  *See* Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. Recons. [89] at 2 (noting that Shea filed his motion to allow Judge Sullivan to "fix legal errors [of] the previous judge."); Apr. 6, 2011 Tr. at 13 (explaining that State filed its motion despite internal debate over the propriety of doing so based on the change of judge).   Parties should not use motions for reconsideration to attempt to relitigate matters already settled.  *See Solomon v. Univ. of S. Cal.*, 255 F.R.D. 303, 305 (D.D.C. 2009) (such motions "may not be used to relitigate old matters" (internal citations and quotations omitted)).  This is State's second request for reconsideration of the legal standard under which the MLAAP should be analyzed, s*ee generally* Def.'s Mot. Recons. [70], and normally this request would be denied outright.   However, because the prior motion was denied without a supporting memorandum, Aug. 20, 2009 Order [71], the Court is

entertaining this particular question again in order to more fully explain its reasoning.  The Court is applying the standard for reconsideration equally to all issues the parties have presented, and will deny reconsideration unless the party has shown "that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Pueschel*, 606 F. Supp. 2d at 85.

## III.   ANALYSIS

State argues that the Court erred as a matter of law by analyzing the MLAAP under Title VII, but the statutory text, legislative history, and State's supporting evidence do not support State's argument, and hence State's request for reconsideration of that issue will be denied. Neither party demonstrates the extraordinary circumstances leading to harm or injustice that would warrant reconsideration of the remaining issues raised in their motions, hence both parties' motions for reconsideration will be denied.   Because resolution of Shea's Estoppel Motion will impact State's response to Shea's Motion for Summary Judgment, State's Motion to Enlarge Time to Respond will be granted, and Shea's Motion for Summary Judgment will remain in abeyance pending the Court's resolution of the Estoppel Motion.  Shea's Motion for Clarification is now moot, and hence will be denied.

### A.  State Has Not Met Its Burden of Showing that the Court Applied Incorrect Law in Analyzing the MLAAP.

State argues that the MLAAP was a congressionally-mandated affirmative action program that created an exception to Title VII, and that the Court erred as a matter of law by interpreting the program as a voluntary affirmative action program under Title VII.  *See* State Recons. P. & A. at 2.  Such an error would be valid grounds for reconsideration of the Court's prior order.  However, State has not demonstrated that Congress intended its enactment to be construed as an exception to (and hence immune from challenge under) Title VII, has not

demonstrated that the MLAAP itself was Congress' mandated solution, and has not demonstrated that its "interpretation" is entitled to *Chevron* deference.  State also has not shown that some harm or injustice will result by denial of reconsideration.

In 1985, Congress enacted the Foreign Relations Authorization Act for Fiscal Years 1986-87 ("FRAA").  In that Act, Congress required the State Department to develop plans to increase representation of minorities and women in the Foreign Service, with a special emphasis on mid-level employees.  Pub. L. 99-93 § 152.  The relevant section, in its entirety, requires:

> (a) Development of program—The head of each agency utilizing the Foreign Service personnel system shall develop, consistent with section 7201 of Title 5, a plan designed to increase significantly the number of members of minority groups and women in the Foreign Service in that agency.

> (b) Emphasis on mid-levels—Each plan developed pursuant to this section shall, consistent with section 7201 of Title 5, place particular emphasis on achieving significant increases in the numbers of minority group members and women who are in the mid-levels of the Foreign Service.[4]

22 U.S.C. § 3922a (2006).  While this statutory language clearly requires State to implement a plan to address mid-level positions, it is silent on to the means by which State is to accomplish this goal.  State instituted the MLAAP in response to this directive, and argues that it was *required* to create the MLAAP *specifically.  See* State Recons. P. & A. at 3; Def.'s Rep. to Pl.'s Opp. to Def.'s Mot. for Recons. ("State Recons. Reply") [98] at 4.  State argues that the FRAA created a narrow exception to Title VII, State Recons. P. & A. at 5, hence the MLAAP cannot be challenged under Title VII, *id.* at 7, and that its interpretation is entitled to *Chevron* deference. *Id.* at 7 n.7; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  State posits that such a finding would be dispositive of Shea's claims.  *See* State Recons. P. & A. at 8.

---

[4] The original enactment also included subsection (c), pertaining to reporting requirements, which was repealed in a subsequent reauthorization of the FRAA, when reporting requirements from several sections were consolidated.

Nothing in the language of § 3922a supports the contention that Congress intended that State's solution would be immune from challenge under Title VII. The D.C. Circuit has held that Title VII analysis applies to federal agencies as it does to private employers. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005) (citing *Singletary v. Dist. of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003)). State has provided no case law holding that a congressional requirement to increase minority hiring should be construed as an exception to Title VII, and the Court was unable to locate any. State argues, citing to a single off-point case,[5] that the absence of any mention of Title VII in § 3922a means that Congress intended an exception to Title VII. *See* State Recons. Reply at 11. That argument doesn't pass the smell test.

In fact, a closer reading of the statute implies the *opposite* of State's conclusion. Section 3922a includes, by reference, the federal government's employment nondiscrimination requirement: "It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin." 5 U.S.C. § 7201(b) (2006). Where the statute expressly references federal employment nondiscrimination law, imputing an exception from the law that provides remedies for federal employment discrimination is not a reasonable interpretation.[6] As the Court noted in its prior order, "[w]hat § 3922a mandated was race[-]conscious action that was lawful." Aug. 11, 2009 Order [69] at 5.

In the absence of any supporting case law, State relies on other methods of statutory interpretation. State argues that canons of statutory construction as well as legislative history lead to the conclusion that the FRAA creates an exception to Title VII, and further argues that

---

[5] State cites to *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986), but that case has nothing to do with employment or Title VII, deals only with the language of a specific statute rather than a potential conflict between statutes, and concerns interpretation of the scope of an agency's rule-making authority under the statute in question.
[6] Arguably § 3922a also includes Title VII by reference, as § 7201 requires reporting on federal affirmative action programs under Title VII's federal employment provisions. *See* 5 U.S.C. § 7201(e) (2006).

the Court must accede to State's interpretation under *Chevron* deference  *See* State Recons. P. & A. at 5-8; State Recons. Reply at 6-7.  None of these arguments avails State.

State correctly notes that the Court has a duty to interpret statutes in a fashion that upholds the intent of each statute.  *See* State Recons. P. & A. at 5.  Thus the Court should interpret Title VII and the FRAA together where such an interpretation is possible.  State then notes that where two statutes conflict, a more specific statute controls over a general statute in the same field.  *See id.* at 6.  State argues that the FRAA is a more specific statute where Title VII is a general statute.  *Id.*  But absent a showing that it was not possible to comply with the FRAA without violating Title VII, this argument does not prevail over the broad requirement for the Court to give effect to all of Congress' enactments and construe the two statutes together. State has made no such showing.

State also argues that the Court should look beyond the statutory text to the statutory preambles and to the legislative history.  *See* State Recons. P. & A. at 6-7 (citing to congressional findings in statutory preambles); State Recons. Reply at 6-7 (citing to congressional hearings in support of reauthorization of the FRAA).  Where statutory text is ambiguous, courts may look to the preamble and legislative history for clarification.  *See, e.g.*, *Ass'n of Am. Railroads v. Surface Transp. Bd.*, 237 F.3d 676, 680 (D.C. Cir. 2001) (finding that the lower court erred in not considering the preamble to resolve a clear ambiguity in statutory text); *Nat. Rifle Ass'n of Am., Inc. v. Reno*, 216 F.3d 122, 127 (D.C. Cir. 2000) (noting that courts may examine legislative history to review congressional intent).  But on the questions of whether an exception to Title VII was intended and of the form of the plan State was to enact, § 3922a is not ambiguous.  It is silent.  State asks the Court to construe a statutory exception and a specific structural mandate from that silence, by way of the preambles to and legislative history of the FRAA's multiple reauthorizations.

Even were the Court to follow that interpretive model, it is clear that the various preambles and the cited legislative history do not support State's argument. These congressional findings explain that the Foreign Service does not reflect the diversity of our population, and admonish State to try harder to address that situation. *See* State Recons. P. & A. at 6-7; State MSJ Mem. P. & A. at 11-12; State Recons. Reply at 6-7. Nothing in the findings and hearings quoted by State, nor anything in the remaining congressional findings in the relevant enactments, supports an argument that Congress meant an exception to Title VII or mandated the form of the plan State was to create to resolve the issue that Congress wanted addressed. *Cf.* Pub. L. No. 100-204 § 183, 101 Stat. 1331 (1987); Pub. L. 101-246 § 149, 104 Stat. 15 (1990); State Recons. Reply at 6-7. Admonitions to "do better" do not imply "do better and ignore Title VII in the process."

The 1990 appropriations enactment is particularly noteworthy for another reason entirely. This enactment established the Foreign Service Internship Program, by name. *See generally* Pub. L. 101-246 § 149, 104 Stat. 15 (1990). It also specifies the form of the internship program in detail. *See id.* § 149(b) (codified at 22 U.S.C. § 4141a). Conversely, § 3922a specifies neither the name nor the form of the MLAAP, the program that State asserts Congress mandated. The difference between these two enactments could not be more striking, and strongly militates *against* State's interpretation of § 3922a.[7] It is clear from a side-by-side examination of these two enactments that had Congress intended to mandate the form of the program to meet the requirements of § 3922a, it would have drafted language defining the MLAAP as it did for the Foreign Service Internship Program.

---

[7] State failed to bring to the Court's attention two critical points. First, State failed to note that the 1990 appropriation to which it cites speaks *only* to the internship program and mentions mid-level employment not at all. Yet State used those congressional findings to bolster its argument regarding how the MLAAP should be interpreted. Second, State failed to mention § 4141a, citing only to § 4141, when both statutory sections were created by the same enactment. As the structure of § 4141a strongly rebuts State's argument about congressional intent for § 3922a, this discrepancy clearly should have been addressed, and the Court is troubled by this oversight.

State further argues that irrespective of these issues, the Court should defer to the Executive's construction of the FRAA under the doctrine known as "*Chevron* deference." *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). However, *Chevron* deference only applies when the interpretation carries the force of law. *See Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006). The FRAA is a requirement that the agency address deficiencies, as perceived by Congress, in State's own operations. There is no "interpretation" under such an enactment that "carr[ies] the force of law," *id.*, that would make *Chevron* deference applicable. Additionally, the law is clear that agencies are not entitled to deference for interpretations offered by their counsel in legal briefs. *City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 192 (D.C. Cir. 1991) ("In whatever context we defer to agencies, we do so with the understanding that the object of our deference is the result of agency decisionmaking, and not some *post hoc* rationale developed as part of a litigation strategy."). State has adduced no evidence that its interpretation that the FRAA mandated establishment of the MLAAP immune to Title VII challenge is one that was promulgated by the agency prior to commencement of litigation or in a rule carrying the force of law. State brought forward neither regulations nor adjudications applying this interpretation.

In fact, State's own evidence refutes its stated interpretation. State's Motion for Summary Judgment attached a copy of an Equal Employment Opportunity Commission ("EEOC") final determination of a complaint under the MLAAP. *See generally* State MSJ Ex. 2 [46-2]. State included this exhibit to describe the lifespan of the MLAAP. *See* State Mat. Facts ¶¶ 4, 13. But this memorandum expressly contradicts State's assertion that the MLAAP was not a voluntary affirmative action program under Title VII. *See* State MSJ Ex. 2, at 3 (referring to the MLAAP as "[State's] voluntarily adopted affirmative action plan"). The EEOC is chartered with promulgating the guidelines for agency affirmative education programs, as well as any

11

program State implemented in response to FRAA.  *See* 5 U.S.C. § 7201(d) (2006); 29 C.F.R. §

1614 (2009); *see also* 22 U.S.C. § 3922a (2006) (incorporating 5 U.S.C. § 7201 by reference).

The EEOC's interpretation of the MLAAP as a voluntary affirmative action program, while not

conclusive, is persuasive.

State has not met its burden of showing that the Court made an error of law by finding

that the FRAA must be interpreted in conjunction with Title VII.  The FRAA clearly does not

mandate an exception to Title VII and does not mandate creation of the MLAAP specifically,

and the related legislative materials fail to support State's argument.  Further, *Chevron* deference

is not applicable to State's interpretation, and even if it were applicable, State's own evidence

contradicts the interpretation the Court is being asked to defer to.  Therefore State's request for

reconsideration of the applicable law for review of the MLAAP will be denied.

**B.  State Has Not Shown that the Court Erred in Failing to Strike Shea's Motion for Summary Judgment.**

State also requested reconsideration of the Court's denial of its motion to strike Shea's

Motion for Summary Judgment [74], on the basis that the evidence submitted by Shea would not

be admissible at trial as is required by the Federal Rules of Civil Procedures.  *See* State Recons.

P. & A. at 11; Feb. 2, 2010 Order [78].  In denying State's motion, the Court made clear that

State should be prepared to respond to Shea's Motion for Summary Judgment, rather than

requesting that it be stricken, and allowed State to defer filing its opposition until after the close

of discovery.  Feb. 2, 2010 Order [78] at 2.  This decision is not clearly erroneous, as it simply

reserves judgment on State's argument until the motion is fully briefed.  Nor has State shown

that any harm arises from the decision.  A decision in State's favor would be in no way

dispositive, and hence the proceedings would simply continue towards trial.  The Court will

consider State's objection pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure

when Shea's Motion for Summary Judgment is fully briefed and properly before the Court. Therefore State's request for reconsideration of the decision not to strike Shea's motion will be denied.

### C.   Shea Has Not Met His Burden of Showing that Reconsideration of the Court's Title VII Analysis is Warranted.

Upon remand, the Court denied the parties' cross-motions for summary judgment. Having addressed the issues State raised for reconsideration, the Court now turns to the issues that Shea has raised.  Three of the four issues Shea posits (items numbered 1, 2, and 4) relate to the Court's analysis of Shea's Title VII claim: (1) that the Court placed the burden on Shea to establish the amount of damages to which he was entitled, (2) that the Court failed to give conclusive effect to certain requests for admissions, and (4) that the MLAAP must be presumed lawful until Shea demonstrates that it is not.  *See* Shea Mot. Recons. at 1.  Because a decision in Shea's favor here would still not result in the Court granting summary judgment, Shea has not met his burden of demonstrating that harm or injustice would result from the denial of reconsideration of these three issues.

In reviewing Shea's Title VII claim, the Court noted that Shea had to satisfy three elements of the claim: (1) that the MLAAP was unlawful, (2) that except for his race, Shea was qualified for the program, and (3) that Shea was damaged during the period in question by the continuing effects of the MLAAP.  Aug. 11, 2009 Mem. Order [69] at 5-6.  The threshold issue for a court addressing a Motion for Summary Judgment is to ensure "that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Shea's requests for reconsideration fail at this point.

Shea's fourth issue for reconsideration is the Court's finding that the MLAAP must be presumed lawful until Shea demonstrates otherwise.  Shea Mot. Recons. at 1.  Shea notes that

this finding is correct under Supreme Court precedent, and presents his request for reconsideration as a proffer for the record in the event this case is appealed to the Supreme Court. Shea Mot. Recons. at 23. As the Court's decision was admittedly correct under the law, Shea's fourth issue for reconsideration will be denied. More importantly, in its original decision, the Court found that "[t]he necessary conclusion is that genuine issues of material fact remain in dispute as to the lawfulness of State's affirmative action program." Aug. 11, 2009 Mem. Order [69] at 9. Shea has not contested this conclusion, only the presumption that the program is lawful until proven otherwise. *See generally* Shea Mot. Recons. at 23-28.

Arguably, the Court's analysis of Shea's Title VII claim might have ended here, as the summary judgment motion fails for the Title VII claim on this finding alone. But the Court went ahead and addressed the other two prongs of the Title VII test that it enumerated. *See* Aug. 11, 2009 Mem. Order [69] at 9-11. The first and second issue in Shea's motion for reconsideration address the Court's finding with respect to Shea's demonstration of harm. Were the Court to change its decision on these two issues, Shea's summary judgment motion would still fail on the unlawfulness element. Shea cannot show that any harm or injustice would result from denial of reconsideration of these issues when he already conceded the point on the unlawfulness of the MLAAP. Therefore Shea's first two issues for reconsideration will also be denied.

### D. Shea Has Not Shown that the Court Erred by Allowing State to File Responses to His Request for Admissions Out of Time

Shea's third issue for reconsideration concerns the Court's decision to grant State's motion for leave to file responses to Shea's requests for admissions out of time. *See* Shea Mot. Recons. at 1; *see generally* Def.'s Mot. Leave to File [75]; Feb. 2, 2010 Order [78]. Shea argues that the Court misapplied the standard for withdrawing or amending an admission under Rule 36(b) of the Federal Rules of Civil Procedure. Shea Mot. Recons. at 19-23. Shea's opposition to

14

State's motion only objected to allowing State to respond to admission number 10.  Pl.'s Opp. to

Def.'s Rule 36(b) Mot. [76] at 1; Shea Mot. Recons. at 20.  Admission number 10 stated:

> Plaintiff met the minimum objective qualifications to have applied to start at a mid-level FSO grade under the MLAAP, with this one exception: as a white non-Hispanic, he was not eligible to participate in the program.

Shea Mot. Recons. at 20.  In granting State's motion for leave to file, the Court limited State's

response to this request for admission:

> [U]nless the government is prepared to demonstrate that any non-minority person applied for and was denied acceptance to MLAAP because of his or her qualifications, the plaintiff will be deemed to have been qualified for MLAAP – except for his race (or national origin, or ethnicity).

Feb. 2, 2010 Order [78] at 1-2 (emphasis in original).  Shea himself notes that in allowing State

to late file its admissions subject to this limitation, State's "victory [was] a hollow one."  Shea

Mot. Recons. at 21.  Hence Shea has not met his burden of showing that harm or injustice would

arise by the Court's failure to change its decision on this matter.  Therefore Shea's third issue for

reconsideration will also be denied.

### E.  Resolution of Motions Filed Subsequent to the Court's Stay of the Proceedings.

Judge Sullivan stayed the proceedings in this case on March 9, 2011, pending a status

hearing to be held April 6, 2011.  Mar. 9, 2011 Minute Order.  Prior to the hearing, Shea filed a

notice of matters he felt useful to discuss at the April 6 hearing, to which State filed a response.

See generally Pl.'s Notice [92]; Def.'s Resp. to Pl.'s Notice [94].  State also filed its Motion for

Reconsideration.  See generally Def.'s Mot. Recons. [93].  At the April 6, 2011 hearing, Judge

Sullivan extended the stay pending resolution of State's Motion for Reconsideration.  Apr. 8,

2011 Minute Order.  Subsequently Shea filed his Estoppel Motion, State filed its motion for

extension of time to reply, and Shea filed a motion requesting clarification of the status of the

April 8 stay.  *See generally* Estoppel Motion [106]; Def's Mot. Ext. Time [107]; Pl.'s Mot. Clarif. [108].

While it is clear from the transcript of the April 8, 2011 hearing that Shea filed his Estoppel Motion in violation of the stay, the purpose of the stay was to address State's motion for reconsideration.[8]  This now having been accomplished, that stay is no longer in force, and striking Shea's Estoppel Motion serves no purpose.  When the Court denied State's Motion to Strike, it held Shea's Motion for Summary Judgment in abeyance, ruling that State was not obliged to respond to it until the completion of discovery.  Feb. 2, 2010 Order [78] at 2.  At the April 6, 2011 hearing, the parties stipulated that discovery is complete.  *See* Apr. 6, 2011 Tr. at 10-11.  However, because the Court's resolution of Shea's Estoppel Motion will affect State's response to Shea's Motion for Summary Judgment, it is appropriate for the Court to continue to hold the summary judgment motion in abeyance.  Therefore, in consideration of the current state of these proceedings, the Court will deny Shea's Motion for Clarification as moot, will grant State's motion for extension of time, will continue to hold Shea's Motion for Summary Judgment in abeyance, and will extend the stay of the proceedings until Shea's Estoppel Motion is fully briefed.

## IV.    CONCLUSION

State has failed to meet its burden of showing that the Court erred as a matter of law in requiring that the FRAA be interpreted alongside, not as an exception to, Title VII, and State has failed to show that this finding works an injustice.  State has also failed to show that the Court's failure to strike Shea's Motion for Summary Judgment was in error or results in injustice.  Therefore, State's Motion for Reconsideration [93] will be denied.

---

[8] "After . . . a preliminary review of Defendant's motion, the Court has determined that the best way to proceed is *to continue the temporary stay of this action while Plaintiff responds to Defendant's motion for reconsideration*. . . . Following the resolution of *this* issue the Court will be in a better position to determine how to address the remaining issues before the Court."  Apr. 6, 2011 Tr. at 6-7 (emphasis added).

16

Shea has failed to meet his burden of showing harm from the Court's failure to reconsider its decision that Shea bears the burden of persuasion of showing that he suffered injury due to the MLAAP as such a finding would not reverse the denial of Shea's Motion for Summary Judgment.  Nor has Shea shown that the Court's order allowing State, subject to limitation, to late file responses to his request for admissions will prejudice his case.  Therefore Shea's Motion for Reconsideration of Four Matters [85] will be denied.

As the reason for the prior stay has been resolved, Shea's Motion for Clarification [108] is now moot, and hence will be denied.  State's Consent Motion to Enlarge Time [107] will be granted.  State will have fourteen (14) days from this date to file its opposition to Shea's Estoppel Motion [106], and Shea will then have seven (7) days to file a reply.  Shea's Motion for Summary Judgment [74] remains in abeyance, and the proceedings remain stayed, pending resolution of Shea's Estoppel Motion.  When the Court rules on the Estoppel Motion, the Court will also issue a schedule to complete briefing Shea's Motion for Summary Judgment and will reconsider the status of the stay.

So that there is no further ambiguity about the stay: until the Court orders otherwise, the parties must seek leave to file any briefs other than the required opposition and reply for Shea's Estoppel Motion.  Such leave will only be granted if the Court, at its discretion, feels that the issue raised would prejudice one of the parties in meeting a requirement to timely complete briefing of Shea's Motion for Summary Judgment after the Court rules on the Estoppel Motion.  Any such requests must include a copy of the proposed filing.

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 23, 2012.