UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM E. SHEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 02-577(RCL) |
| HILLARY CLINTON, | ) |
| (In her official capacity as | ) |
| Secretary of State) | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Pending before the Court is plaintiff's Motion [106] asking the Court to apply judicial estoppel to bar the defendant from filing an Opposition to plaintiff's Motion for Summary Judgment [74]. Upon consideration of the Motion [106], the Opposition [115], the Reply [116], the entire record herein and the applicable law, plaintiff's Motion will be DENIED.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This is a Title VII reverse discrimination claim brought by *pro se* plaintiff William Shea ("plaintiff" or "Shea"), a career foreign service officer, against the State Department ("defendant," "State," or "government"). Compl. [1] at 2, Mar. 3, 2002.[1] In 1992, when Shea was offered an appointment to the Foreign Service, the State Department had in place a Mid–Level Affirmative Action Hiring Program ("MLAAP") that allowed certain candidates to be hired directly into higher, non-entry-level grades. *Id.* In a nutshell, Shea claims that his career

---

[1] The pending action's ten-year history was related in this Court's recent Opinion, and so only facts relevant to the pending Motion [106] are stated here. *See Shea v. Clinton*, ---F. Supp. 2d ---, No. 02-cv-577, 2012 WL 983120, at *1, (D.D.C. Mar. 23, 2012).

1

advancement and pay were handicapped by his race because, as a Caucasian of Irish decent, he was ineligible for MLAAP.  Compl. [1] at 3–4.

In the present motion, Shea asks the Court to apply the doctrine of judicial estoppel to bar defendant from filing an opposition to his Motion for Summary Judgment [74], or from "presenting evidence or argument contradicting the facts and arguments" plaintiff asserted in his Motion [74].  Mot. [106] at 1, Nov. 7, 2011.  In what Shea terms as "more-limited" relief, he asks, in the alternative, that the Court bar defendant from "challenging with evidence or argument" both his qualifications to give opinion testimony and the analysis he uses to support his Title VII claim.[2]  *Id.* at 1, 22–23.

Shea's current Motion [106] has its genesis in a status conference held before Judge Robertson on December 18, 2009.  At that hearing, the Court ordered that expert and fact discovery close by April 15, 2010, and gave the parties until May 15, 2010, to file Motions for Summary Judgment.  Hr'g Tr. [115-1] at 11, Dec. 18, 2009.  Judge Robertson specifically advised Shea that he need not wait for the close of discovery to file his motion for summary judgment, but that the government might respond to a motion filed before the close of discovery by asking for time to complete discovery under Rule 56.  *Id.* at 6–7.  Accepting Judge Robertson's invitation, Shea promptly filed his Motion for Summary Judgment on New Year's

---

[2] Plaintiff's request is so far reaching that it deserves a full recitation: Shea asks the Court to bar the defendant from:
>  [C]hallenging with evidence or argument [plaintiff's] qualifications to give opinions concerning this matter; [his] methodology in arriving at [his] opinions; [his] use of the comparator population of Public Administrators in [his] analysis; [his] lack of any back-up analysis using other comparator populations or more recent data; any calculations into the statistical significance and standard deviation of [his] results; and whether [his] methods are the kind to be accepted by courts so as to be admissible.

Mot. [106] at 22–23.  With regard to "matters of [] possible career advancement in the Foreign Service and [] lost pay had [he] been accepted and placed in the Foreign Service through MLAAP," plaintiff asks the Court to bar defendant from challenging his:
>  [Q]ualifications and background to offer opinions on those matters; [his] methodology in coming to [his] opinions; alternative likely career paths or results as demonstrated by other entrants' history in the MLAAP; and all other matters that form the basis or demonstrate a lack of basis for [his] opinions regarding these matters.

*Id.*

2

Day 2010. Pl's. Mot. Summ. J. [74]. Defendant responded by filing a Motion to Strike under Federal Rule of Civil Procedure 56(e) (now Rule 56(c)), or in the alternative to deny the motion pending further discovery pursuant to Federal Rule of Civil Procedure 56(f) (now Rule 56(d)). Mot. Strike [77] at 1, Feb. 1, 2010. Defendant asserted that because plaintiff was incompetent to testify on statistical matters vital to his Title VII case and provided no expert testimony, other than his own analysis, he failed to meet Rule 56(e)'s requirement to "set out facts that would be admissible in evidence." *Id.* at 1–2. In the alternative, defendant requested more time for discovery because of plaintiff's failure to make Rule 26(a)(2)(B) disclosures, which were required to accompany his "expert" statistical analysis.[3] *Id.* at 2. Defendant, therefore, desired to depose Shea in order to obtain information regarding his qualifications and background, and the analytical methods he used to create his statistical evidence. *Id.* at 2; Decl. of Counsel [77-4] at 2. Defendant also requested time to "find persons knowledgeable about the Department's 1990-92 MLAAP" program and to retain their own rebuttal expert witness. *Id.* at 2–3.

One day later, with little discussion or guidance and before plaintiff even filed an opposition, the Court denied the government's Motion to Strike [77]. Order [78] at 2, Feb. 2, 2010. The Court held in abeyance plaintiff's Motion for Summary Judgment and instructed the government that it had no obligation to respond to it until discovery was complete. *Id.* Defendant then filed a Motion for Reconsideration asking the Court to review its Order [78]. Mot. Recons. [93] at 1, Apr. 5, 2011. The next day, in a hearing before Judge Sullivan on April 6, 2011, the parties stipulated that discovery had been completed. *See Shea v. Clinton*, ---F. Supp. 2d ---, No. 02-cv-577, 2012 WL 983120, at *9, (D.D.C. Mar. 23, 2012). The case was

---

[3]At the time of plaintiff's Motion [77], Rule 26(a)(2) required disclosure of a written report from each expert witness identified by a party at least 70 days before the close of discovery. The expert witness's report had to include the data or other information considered by the witness in forming his expert opinions, and the witness's qualifications to form such opinions. Fed. R. Civ. P. 26(a)(2) (West 2010).

transferred to the undersigned Judge on October 10, 2011, and defendant's Motion for Reconsideration [93] was denied on March 23, 2012. *Id.* at *1. The Court held that its original decision was not clearly erroneous "as it simply reserve[d] judgment on defendant's argument until the motion [for summary judgment] . . . [was] fully briefed." *Id.* at *7. The Court then ordered the present Motion [106] to be briefed, and ordered that plaintiff's Motion for Summary Judgment [74] remain in abeyance pending the resolution of this Motion. *Id.* at *10.

## II.     LAW

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)); *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792 (D.C. Cir. 2010).[4] The purpose of judicial estoppel is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," thereby playing "fast and loose with the courts." *Id.* (citations omitted). Indeed, the public policy behind the judicial estoppel doctrine is to "'exalt[] the sanctity of the oath . . . [and] to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing . . . .'" *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980) (quoting *Melton v. Anderson*, 222 S.W.2d 666, 669 (Tenn. Ct. App. 1948)). While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principles," *Id.* (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982), it is generally invoked where a party takes one stance during a legal proceeding

---

[4] The government's averment that "there is some question as to whether the D.C. Circuit has even recognized the availability of 'judicial estoppel' doctrine in this Circuit" is simply incorrect. Def's. Opp. [115] at 8, Apr. 5, 2012. Not only has the Supreme Court acknowledged the existence of the doctrine, a simple search of case law demonstrates that this Circuit has wisely followed the Supreme Court's lead. *See, e.g. Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792 (D.C. Cir. 2010).

and succeeds, and later, because the party's interests have changed, assumes a contrary position, *Moses*, 606 F.3d at 798 (citations omitted). The inconsistent stances can be in the same or different proceedings. *Contech Const. Prod., Inc. v. Heierli*, 764 F.Supp.2d 96, 106 (D.D.C. 2011) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293–94 (5th Cir. 2004)).

Nevertheless, the Supreme Court has identified three factors that, while not being "inflexible prerequisites," should be considered by courts before invoking the doctrine. *Maine*, 532 U.S. at 751. These are: (1) whether the "party's later position . . . [is] 'clearly inconsistent' with its earlier position;" (2) whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled;'" and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Maine*, 532 U.S. at 750–51 (internal citations omitted). "Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." *Contech*, 764 F. Supp. 2d at 116 (citing 18B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 4477, at 594 (2d ed. 2002)).

## III. ANALYSIS

The gravamen of plaintiff's argument is his reading of both defendant's Motion [77] to Strike and the Court's Order [78] denying that motion. Plaintiff asserts that the government took the sworn position that it "could not present facts essential to justify its opposition to . . . [plaintiff's Motion for Summary Judgment] without first deposing [plaintiff] to obtain certain 'essential' and 'necessary' information." Mot [106] at 1, 11–15 (quoting Def.'s Mot. Strike [77]

and accompanying affidavits [77-3–4]). Plaintiff reads Judge Robertson's brief Order [78], which he issued the day after defendant filed his Motion to Strike [77], as granting defendant's Rule 56(f) motion for continued discovery based on the assertions regarding defendant's inability to respond to plaintiff's Summary Judgment Motion [74]. *Id.* at 11.

Unfortunately for plaintiff, his reading of both defendant's Motion [77] and the Court's Order [78] are inaccurate. Defendant requested time to continue discovery for multiple reasons, not solely to take plaintiff's deposition. Mot. Strike [77] at 11–13. The necessary discovery included plaintiff's "qualifications to [give expert testimony]," more time to find persons with historical knowledge about the MLAAP program, and to retain a rebuttal expert witness. *Id.* at 11–13. Defendant also requested that the court "deny" plaintiff's Motion [74] for summary judgment "until the close of discovery and until Plaintiff has fully complied with the requirements of Fed. R. Civ. P. 26(a)(2)." *Id.*

In support of defendant's Motion [77], Assistant United States Attorney Darrell Valdez, in his sworn declaration, stated that because plaintiff had not made any Rule 26 disclosures, defendant "was unable to inquire into Plaintiff's qualifications to . . . [give expert testimony], and was further unable to consult and obtain its own expert to rebut the Plaintiff's opinion testimony." Decl. of Counsel [77-4] at 2. It is clear that defense counsel expected plaintiff to submit a Rule 26 report, and would, thereafter, need time to both depose plaintiff regarding his background and qualifications, and to obtain a rebuttal expert. *Id.* Mr. Shea, however, was never deposed, Decl. of William Shea [106-3] at 1 (undated), nor does it appear that he ever filed a Rule 26 report, *see* Shea-Valdez Email Exchange [106-2] at 1, Oct. 21, 2011. The pleadings are devoid of evidence regarding the other requested discovery.

Even if the Court read the government's position as duplicitous, Shea's motion would still fail because the Court never explicitly accepted the government's first position, and thus there would be no appearance that the Court was misled. Order [78] at 2. Shea asks the Court to read its April 2, 2010, Order [74] as the Court ruling for the defendant. Mot. [106] at 11. In reality, it explicitly denied State's Motion without reservation, [77] but held plaintiff's Summary Judgment Motion [74] in abeyance until the close of discovery. Order [78] at 2. Thus, the Court's Order [78] did nothing more than affirm the original discovery schedule set by Judge Robertson at the December 18, 2009, hearing. Hr'g Tr. [115-1] at 11. Because any "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency," it would be incorrect to find for plaintiff here, because the inconsistency here is tenuous at best. *Contech*, 764 F. Supp. 2d at 116 (citing 18B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 4477, at 594 (2d ed. 2002)).

Shea finally argues that the government need not derive an unfair advantage or cause an unfair detriment in order for the Court to rule in his favor. Pl.'s Reply [116] at 5–6, Apr. 10, 2012. In light of the Supreme Court's admonishment that the factors it set out in *Maine* were not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," the Court must agree with plaintiff's assessment. 532 U.S. at 751. However, the Court, in its discretion, views the unfair advantage/detriment factor as important, because such a determination sheds light on the opposing party's motives for taking contrary positions. A party's motivation goes directly to the public policy underlying the doctrine: "placing a restraint upon the tendency to reckless and false swearing." *Chen*, 626 F.2d at 937 (citations omitted). For example, the Court would be much more likely to judicially estop a party if the Court determined that the party's actions were deliberate and calculated so as to play "fast and loose

7

with the [C]ourt[]." *Maine*, 532 U.S. at 750. Here, however, it appears that both plaintiff and defendant got lost in the fog of litigation and failed to follow through with their anticipated discovery.

The Court also notes that judicial estoppel "is an equitable doctrine invoked by a court at its discretion," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* One of those considerations must be the requested relief. Here, plaintiff asks the Court to deny the government an opportunity to respond to plaintiff's Motion for Summary Judgment [74], or to handicap the government's opposition by effectively requiring the government to admit that plaintiff is qualified to give expert analysis, and to accept his analysis. Mot. [106] at 1, 22–23. Under our local rules, an unopposed motion can be treated as conceded. LCvR 7(b). Thus, granting plaintiff's Motion could, *de facto*, resolve the case in the plaintiff's favor. However, "[O]ur [justice] system favors the disposition of cases on the merits." *Trakas v. Quality Brands, Inc.*, 759 F. 2d 185, 186–87 (D.C. Cir. 1985). The D.C. Circuit has also warned against issuing default judgments for attorney misconduct when less drastic sanctions are available to rectify the harm. *See Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001); *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074–75 (D.C. Cir. 1986). Therefore, ruling for plaintiff, even if the Court was inclined to do so, would likely be reversible error.

The purpose of judicial estoppel is to "protect the integrity of the judicial process." *Maine*, 532 U.S. at 750 (citations omitted). Holding for the plaintiff here would not serve that interest, but would instead give plaintiff a shortcut to the result he desires. Far from being equitable, resolving this case in this fashion would create a manifest injustice.

## IV.   CONCLUSION

For the aforementioned reasons, the court will not grant plaintiff's Motion for the Application of Judicial Estoppel [106]. Accordingly, it is hereby

**ORDERED**, that the plaintiff's Motion be, and hereby is, **DENIED**.

It is **FURTHER ORDERED** that defendant's Opposition to plaintiff's Motion for Summary Judgment is due on or before August 13, 2012, and plaintiff's Reply, if any, is due on or before August 20, 2012.

**SO ORDERED**

Signed by Royce C. Lamberth, Chief Judge, on July 30, 2012.