**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **WILLIAM E. SHEA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 02-577 (RCL)** |
| | ) | |
| **HILLARY CLINTON, Secretary** | ) | |
| **U.S. Department of State** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Before the Court is the defendant's Motion to Amend Answer, Sept. 20, 2012, ECF No.

129.  Upon consideration of the motion, the plaintiff's Opposition, Sept. 24, 2012, ECF No. 130,

the defendant's Reply thereto, Oct. 3, 2012, ECF No. 133, and the record herein, the Court will

grant the defendant's Motion to Amend Answer.

**I.      BACKGROUND**

This is a Title VII discrimination claim brought by *pro se* plaintiff William Shea, a White

career Foreign Service officer, against the Department of State ("State").  Compl., Mar. 3, 2002,

ECF No. 1.  State had a Mid-Level Minority Hiring Program ("MLAAP") in force when it hired

Shea in 1992.  Mid-level hiring allowed State to hire a Foreign Service candidate directly into a

higher grade, rather than into an entry-level grade.  Mid-level hiring required a "certification of

need" either that an outside hire was required, or the candidate was a member of a specified

minority group under the MLAAP.  Candidates for mid-level hiring were also required to (a)

have substantial professional experience, (b) receive a passing grade on an oral examination, and

(c) pass a background check.  Shea alleged that he would have passed the screening process, but was excluded from consideration solely because of his race, as there was no certification of need. Specifically, Shea alleged harm because his hiring at entry-level rather than mid-level grade has subjected him to lower pay and fewer promotion opportunities than members of minority groups admitted under the MLAAP, in violation of his rights under Title VII.  Shea also alleged constitutional violations, but the Court dismissed those claims and Shea did not appeal the dismissal.  The Title VII claim is the only one still before the Court.  *See Shea v. Clinton*, 850 F. Supp. 2d 153, 156 (D.D.C. 2012) (providing factual and procedural history of case).

The Court originally granted State's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because the statute of limitations had expired.  Mem. & Order, Sept. 30, 2003, ECF Nos. 15 & 16.  On appeal, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded.  *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005) (holding that each time employer pays employee less than another for discriminatory reason, that pay event is a discrete discriminatory event with own statute of limitations).

In light of the Supreme Court's subsequent decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)—which brought the D.C. Circuit's analysis into question—this Court granted State's Motion for Summary Judgment.  *Shea v. Rice*, 587 F. Supp. 2d 166 (D.D.C. 2008).  While this case was again on appeal, Congress passed the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5 (2009), which abrogated the Supreme Court's holding in *Ledbetter*.  The D.C. Circuit remanded for reconsideration in light of this intervening change. *Shea v. Clinton,* No. 08–5491, 2009 WL 1153448, at *1 (D.C. Cir. Apr. 2, 2009).  This Court then denied the remaining portions of both parties' Motions for Summary Judgment.

Mem. Order, Aug. 11, 2009, ECF No. 69.  The Court also denied State's subsequent Motion for Reconsideration.  Order, Aug. 20, 2009, ECF No 71.

On July 23, 2010 the plaintiff moved to hold discovery deadlines in abeyance until resolution of his latest motions for reconsideration.  ECF No. 86.  In response, the Court stayed the entire matter until an April 6, 2011 status conference.  Minute Order, Mar. 9, 2011.  At that conference, the Court orally extended this stay.  The stay remained in effect until the Court resolved plaintiff's motions for reconsideration and motion for application of judicial estoppel. *See* Mem. Op. & Order Denying Pl.'s Mots. Reconsideration, Mar. 23, 2012, ECF Nos. 113 & 114; Mem. & Order Denying Pl.'s Mot. Judicial Estoppel, July 30, 2012, ECF No. 118.

On August 17, 2012, State filed a second Motion for Summary Judgment, ECF No. 120, raising the affirmative defense of mitigation of damages, *id*. at 34–36.  Plaintiff objected to State first raising this affirmative defense in a dispositive motion, rather than in a pleading.  Pl.'s Opp'n to Def.'s Second Mot. Summ. J. 34, Aug. 30, 2012, ECF No. 123.  In response, the defendant submitted the present Motion to Amend Answer to add the affirmative defenses of laches and mitigation of damages to its Answer.  Def.'s Mot. Am., Sept. 20, 2012, ECF No. 129. The Court will grant this motion, as allowing the amendments will not unduly prejudice plaintiff.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated that leave should be "freely given" absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc."  371 U.S. at 182; see also *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 425–27 (D.C. Cir. 1996) (applying *Foman*).  "Although the grant or denial of leave to amend is committed to a district court's sound discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason," such as the factors listed in *Foman*.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  "An answer may be amended to include an inadvertently omitted affirmative defense, and even after the time to amend 'of course' has passed, 'leave [to amend] shall be freely given when justice so requires.'" *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (quoting Fed. R. Civ. P. 15(a)).

One of the "most important factor[s]" to consider when determining whether to grant leave to amend is "the possibility of prejudice to the opposing party."  *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006); see also *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971) ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that [opposing party] would have suffered as a result.").  Courts should also consider "the length of delay between the latest pleading and the amendment sought" and whether the amendment "would unduly increase discovery or delay the trial."  *Djourabchi*, 240 F.R.D. at 13 (citing WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §§ 1487–88 (2012)).

## III.   DISCUSSION

The defendant seeks leave to amend its Answer to plaintiff's Complaint to include the affirmative defenses of laches and failure to mitigate damages.  Def.'s Mot. Am. 1.  Courts liberally interpret Rule 15(a) to allow amendment unless doing so would not be in the interest of justice.  *See, e.g.*, *Firestone*, 76 F.3d at 1208 (Rule 15(a) provides "liberal standard for granting leave to amend"); *Atchinson*, 73 F.3d at 425–26 (district court should grant leave absent some

"'apparent or declared reason'") (quoting *Foman*, 371 U.S. at 182).  Unlike when a party asks to change a scheduling order, the party seeking to amend its complaint does not have the burden to demonstrate that "good cause exists" for the amendment.  *Cf. Barnes v. Dist. of Columbia*, __ F.R.D. __, 2012 WL 4466669, *4 (D.D.C. Sept. 28, 2012).  Instead, courts generally put the burden on the party opposing amendment to show that there is a reason to deny leave.  *See In re Vitamins Antitrust Litigation*, 217 F.R.D. 30, 32 (D.D.C. 2003) ("In essence, to show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding."); *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993) (The "opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.") (internal quotation marks and citations omitted).

A recent opinion by this Court—relied on heavily by the plaintiff—demonstrates how an opposing party can meet this burden.  *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC* ("*NACEPF*"), __ F. Supp. 2d. __, 83 Fed. R. Serv. 3d 625 (D.D.C. Aug. 24, 2012) (discussed in Pl.'s Opp'n to Def.'s Mot. Am. 1–2, 16–19). However, the facts in present case are not sufficiently similar to those in *NACEPF* to demand a similar result.  Finding no significant reason to deny leave, the Court will allow the defendant to amend its Answer to include two additional affirmative defenses.

### A.     Amendment to Include Affirmative Defense of Laches

Defendant requests leave to amend its Answer to include an affirmative defense of laches.  Federal Rule of Civil Procedure 8(c)(1) requires a party to plead affirmative defenses when responding to a pleading.  But the D.C. Circuit suggests that a party's prior failure to object to an affirmative defense on Rule 8(c) grounds may waive a future objection.  *See Lennon v. U.S.*

*Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990); *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 388 F.3d 337, 342 (D.C. Cir. 2004) ("party's failure to challenge the absence of a necessary pleading under [Fed. R. Civ. P.] 8 'in all likelihood waive[s] any waiver defense that [the party's] omission might otherwise have created.'") (quoting *Lennon*, 920 F.2d at 1000).

In a previous summary judgment motion, the defendant raised the affirmative defense of laches.  Def.'s First Mot. Summ. J. 9, Apr. 25, 2008, ECF No. 46.[1]  In his Opposition, the plaintiff substantively responded to the merits of this argument.  Pl.'s Opp'n to Def.'s First Mot. Summ. J. 31–33, May 25, 2008, ECF No. 52.  At that time, the plaintiff did not raise a technical objection to the laches defense; he did not argue that defendant's laches defense was defective because it was not included in the defendant's Answer.  *Id.*

Whether or not there has been a formal "waiver" of plaintiff's Rule 8 objection, State should be allowed to cure any Rule 8 defect by amending its Answer.  The fact that State had previously raised a laches defense, and the plaintiff responded substantively, indicates that there is no "bad faith or dilatory motive" in amending the Answer.  The defendant is not springing completely new theories on plaintiff on the eve of trial, or making "significant eleventh hour changes[.]"  *NACEPF*, 83 Fed. R. Serv. 3d 625, *9.  Instead, defendant seeks to formally add to its Answer an affirmative defense it previously asserted.  The defendant put the plaintiff on notice, at least by 2008, of a laches defense.  The plaintiff, having known about this defense for years, would not be unduly prejudiced if defendant amended its Answer.  Since defendant raised laches years ago, amending the Answer would not cause undue delay.

The plaintiff claims that the defendant is trying to resubmit a previously rejected laches defense.  Pl.'s Opp'n to Def.'s Mot. Am. 5–6.  The plaintiff points to the Court's denial of the

---

[1] State does not discuss its laches defense in its latest Motion for Summary Judgment, ECF No. 120.  This omission would not prevent State from raising laches in the future.  *Cf. Ortiz v. Jordan*, 131 S. Ct. 844, 889 (2011).

defendant's first Motion for Summary Judgment, which discussed laches.  Mem. Order 3–4, ECF No. 69.  Presumably, plaintiff argues that adding a laches defense would be futile; or that since the Court previously rejected defendant's laches defense, the plaintiff was not "on notice" that defendant would assert it again.  When a court decides that a party is not entitled to summary judgment because of insufficient evidence, it does not preclude that party from making that claim again.  *See Ortiz v. Jordan*, 131 S. Ct. 844, 889 (2011) (because factual record "developed in court supersedes the record existing at the time of the summary judgment motion," denial of summary judgment does not have preclusive effect on subsequent proceedings and all defenses may be raised later, including at trial); *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc*., 385 U.S. 23, 26 (1966) ("[T]he denial of a motion for summary judgment because unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim.  It is strictly a pretrial order that decides only one thing—that the case should go to trial.").  When the Court stated that "[g]eneralized assertions of difficulty and two examples of lost or missing data…will not sustain a laches defense," Mem. Order 4, ECF No. 69, it did not prevent State from asserting a laches defense later, after it is able to support its position with additional evidence.  "A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss."  *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam).  The Court's previous denial of summary judgment does not mean that the laches defense would not survive a motion to dismiss.

Plaintiff claims that allowing amendment to add a laches defense would unduly delay trial and prejudice the plaintiff.  The plaintiff has not specifically indicated what additional discovery would be required on this matter.  He claims that he would be prejudiced because now

he would have to "get serious about laches."  Pl.'s Opp'n to Def.'s Mot. Am. 12.  This level of prejudice does not overcome Rule 15(a)'s mandate to freely allow amendment.

### B.  Amendment to Include Affirmative Defense of Failure to Mitigate Damages

The defendant also seeks leave to amend its Answer to include an affirmative defense of failure to mitigate damages.  State claims that "information regarding Plaintiff's failure to apply for a mid-level position in the race-neutral Mid-Level Foreign Service Career Candidate Program did not become known to the Defendant until very recently[.]"  Def.'s Mot. Am. 5.  With this new discovery, defendant seeks leave to include this affirmative defense.

Shea emphasizes that this amendment comes ten years after the filing of this suit, and roughly two decades after the events giving rise to the defense.  By raising mitigation now, plaintiff claims, State exhibits a dilatory motive and would cause undue delay and prejudice. Pl.'s Opp'n to Def.'s Mot. Am. 4–5, 17–19.  Focusing on how long this case has been pending is not as helpful here.  The plaintiff filed this case over a decade ago, but neither party can be "blamed" for some of the case's lengthier delays.  When Shea first filed his complaint, State moved to dismiss, in part, because the statute of limitations had run.  Def.'s Mot. Dismiss 10–11, Jan. 21, 2003, ECF No. 11.  The Court agreed that the case was time-barred, and granted State's motion.  Order, Sept. 30, 2003, ECF No. 15; Mem., Oct. 31, 2003, ECF No. 16.  The D.C. Circuit disagreed, and remanded the case for further proceedings.  *Shea*, 409 F.3d at 453.

While on remand, the case was again interrupted, this time by the Supreme Court's *Ledbetter* decision.  550 U.S. 618.  In the wake of *Ledbetter*, the Court denied State's motion for judgment on the pleadings, and directed State to submit a summary judgment motion after further developing the factual record on whether "the case is within the rule announced in *Bazemore v. Friday*, 478 U.S. 385 (1986), which the Supreme Court has appeared to preserve as

an exception to the *Ledbetter* rule."  Order, Aug. 30, 2007, ECF No. 43.  The Court then granted

State's summary judgment motion, finding that *Ledbetter* applied to Shea's claims.  *Shea*, 587 F.

Supp. 2d 166.  Shea appealed, and while the appeal was pending, Congress passed the Lilly

Ledbetter Equal Pay Act.  Pub. L. No. 111–2, 123 Stat. 5 (2009).  With the District Court's

opinion *again* abrogated, discovery on all matters finally restarted on September 22, 2009.

Plaintiff characterizes State's early focus on its statute of limitations argument as a

"strategic choice[]" that it has to "live with."  Pl.'s Opp'n to Def.'s Mot. Am. 3.  It turns out the

Supreme Court vindicated this strategic choice.  *Ledbetter*, 550 U.S. at 636–37.  Only after

Congress abrogated the Supreme Court's ruling did Shea's claims have new life.  Lilly Ledbetter

Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5 (2009).  From 2002 to 2009, the bulk of the

delays, stays, and discovery abeyances were attributable to this process of figuring out the statute

of limitations under Title VII.  While a court should consider "the length of delay between the

latest pleading and the amendment sought," *Djourabchi*, 240 F.R.D. at 13, this factor has less

force when the delay is not the fault of the party seeking amendment.

Furthermore, on July 23, 2010 the plaintiff moved to hold discovery due dates in

abeyance until resolution of his motions for reconsideration.  ECF No. 86.  In response, the Court

stayed the entire matter until April 6, 2011.  Minute Order, Mar. 9, 2011.  The Court orally

extended this stay at the April 6 status conference.  The Court allowed briefing to continue on

Shea's motions for reconsideration and application of judicial estoppel, but discovery deadlines

remained in abeyance.  Only after the Court denied plaintiff's motions—on July 30, 2012—did

the Court lift the stay and set a schedule for completing dispositive motions.  *See* Mem. Op. &

Order Denying Pl.'s Mots. Reconsideration; Mem. & Order Denying Pl.'s Mot. Judicial

Estoppel.  State is also not responsible for these "delays."  It is easy to say, "This case has gone

on for ten years, why didn't State discover its mitigation defense sooner?"  But that would ignore

why this case has dragged on for a decade.  Some of it was attributable to *Ledbetter*, some to an

abeyance requested by the plaintiff (and stays imposed by the Court).

Shea claims that he would be prejudiced if State amended its Answer.  Pl.'s Opp'n to

Def.'s Mot. Am. 10–15.  "To show prejudice, the non-movant must show unfairness in

procedure or timing preventing the non-movant from properly responding[.]"  *In re Vitamins*,

217 F.R.D. at 32.  The plaintiff does not explain why—in addition to raising technical objections

to State's mitigation defense—he could not have responded substantively when opposing State's

latest motion for summary judgment.  The plaintiff does not specify what additional discovery he

needs to respond properly to State's mitigation defense.

The plaintiff also does not make clear why the Court needs to disallow amendment in

order to avoid prejudice.  State raises the mitigation issue in its latest summary judgment motion.

Def.'s Second Mot. Summ. J. 34–36.  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it
> cannot present facts essential to justify its opposition, the court may:
>    (1) Defer considering the motion or deny it;
>    (2) allow time to obtain affidavits or declarations or to take discovery or
>    (3) issue any appropriate order.

Fed. R. Civ. P. 56(d).  If Shea cannot respond to State's mitigation defense without additional

discovery, the preferred course would be to defer consideration of State's motion until Shea

could obtain such discovery.  The Court should not take the strong step of denying amendment if

other options are available.  *Cf. Foman*, 371 U.S. at 182 ("If the underlying facts or

circumstances relied on by a [party] may be a proper subject of relief, he ought to be afforded an

opportunity to test his claim on the merits.").  However, at this point Shea's vague statements

that he needs more discovery probably would not support a 56(d) submission.  *See First National*

*Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 293–94 (1968) (party cannot provide mere speculation as to what further discovery is needed or what further evidence is available); *Harrison v. Office of the Architect of the Capitol*, 281 F.R.D. 49, 51 (D.D.C. 2012) ("[A] party seeking relief under Rule 56(d) must identify the additional discovery she would seek to oppose a motion for summary judgment 'concretely' and with 'sufficient particularity.'").

This matter is not sufficiently similar to the facts in *NACEPF* to demand a similar result. In *NACEPF*, the plaintiff asked to amend its complaint less than six weeks before trial was set to begin. *See* Pl.'s Mot. Am., July 31, 2012, No. 09-cv-1167, ECF No. 62. The request came after the Court had decided summary judgment. The only option available to the Court was to delay the trial. *NACEPF*, 83 Fed. R. Serv. 3d 625, *6. In this case, no trial date has been set. While both parties deserve a speedy resolution, changing a trial date burdens the parties and Court far more than staying consideration of summary judgment pending additional discovery (if that additional discovery were warranted). The plaintiff in *NACEPF* "'could have included [its] allegations earlier'" and did not "'justif[y] [its] delay,'" thus "'demonstrat[ing] a dilatory motive or bad faith.'" 83 Fed. R. Serv. 3d 625, *9 (quoting *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008)). In this case, State has explained why it recently discovered the factual basis for a mitigation defense. Since Shea waited ten years after the relevant events to bring suit, it would take State longer to look though its records and find pertinent information. The procedural fits and starts of this case—which are not the "fault" of the defendant—made discovery difficult and disjointed. The early focus on the statute of limitations was not just a "strategic choice" that State has "to live with." Pl.'s Opp'n to Def.'s Mot. Am. 3. Until Congress passed the Lilly Ledbetter Act, the parties and Court were justified in focusing primarily on this issue.

11

**V.      CONCLUSION**

Courts should freely grant leave to amend when justice so requires.  Fed. R. Civ. P. 15(a).  The Supreme Court has made it clear that courts should liberally allow amendments, unless there is some "apparent or declared reason" to deny leave.  *Foman*, 371 U.S. at 182.  When considering whether there is a reason to deny leave, a court focuses primarily on the possibility of prejudice to the opposing party.  *Djourabchi*, 240 F.R.D. at 13.

Other than making general statements that he would be prejudiced and need additional discovery, the plaintiff has not specified how allowing amendment would cause undue prejudice.  The plaintiff's emphasis on the time between the Answer and amendment is misplaced because much of that "delay" is attributable to disputes over how to calculate limitations periods under Title VII, and to discovery stays requested by the plaintiff and imposed by this Court.

By allowing defendant to amend its Answer, the Court will consider the mitigation of damages defense State raises in its latest summary judgment motion.  Def.'s Second Mot. Summ. J. 34–36.  The Court will give the plaintiff the opportunity to either substantively respond to this mitigation defense, or explain why it cannot do so at this time.

For the reasons stated above, the Court will grant the defendant's Motion to Amend Answer to add the affirmative defenses of laches and mitigation of damages.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on December 7, 2012.