UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WILLIAM E. SHEA**,

    *Plaintiff,*

v.

**MARCO A. RUBIO**, *in his official capacity as Secretary of State*,

    *Defendant.*

Case No. 1:02-cv-577-RCL

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff William E. Shea's motion to vacate the judgment in this case. ECF No. 153. Relying on Federal Rule of Civil Procedure 60(b)(6), Shea asks the Court to vacate a nearly 13-year-old judgment, arguing that several recent Executive Orders and a Supreme Court case constitute intervening law under which this case would have been decided differently. For the following reasons, the motion is denied.

### I. BACKGROUND

"From 1990 to 1992, the State Department had in place a hiring plan aimed to increase racial diversity among the officer corps in the United States Foreign Service." *Shea v. Kerry*, 796 F.3d 42, 46 (D.C. Cir. 2015). Shea is a former Foreign Service officer who joined the Department while this hiring plan was in effect. *Id.* Shea, who is white, believed "that, because of the plan, he entered the Foreign Service at a lower level than would have been the case had he been a minority applicant." *Id*.

In 2002, Shea sued the Secretary under Title VII of the Civil Rights Act of 1964. ECF No. 1. This Court ultimately granted the Secretary summary judgment in 2013, and the D.C. Circuit affirmed in 2015. ECF Nos. 146–47, 152. In doing so, the Circuit applied the framework

1

for assessing "Title VII challenges to affirmative action programs" set out in *Johnson v. Transportation Agency*, 480 U.S. 616 (1987), and *United Steelworkers of America v. Weber*, 443 U.S. 193 (1979).  *Shea*, 796 F.3d at 51.

Unsurprisingly, the world today is not exactly as it was in 2015.  Between January and April 2025, President Trump issued several Executive Orders relating to affirmative action.  *See* Executive Order 14,151, Ending Radical and Wasteful Government DEI Programs and Preferencing, 90 Fed. Reg. 8,339 (Jan. 20, 2025); Executive Order 14,173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8,633 (Jan. 21, 2025); Executive Order 14,281, Restoring Equality of Opportunity and Meritocracy, 90 Fed. Reg. 17,537 (Apr. 23, 2025).  And on June 5, 2025, the Supreme Court issued a decision in *Ames v. Ohio Department of Youth Services*, 605 U.S. 303 (2025), holding that to establish a prima facie case of discrimination under Title VII, plaintiffs who are members of a majority group need not "show background circumstances to support the suspicion that [a] defendant is that unusual employer who discriminates against the majority."  605 U.S. at 305–06 (citation omitted).

On June 23, 2025, Shea moved to vacate the judgment in this case under Rule 60(b)(6), arguing that these Executive Orders and *Ames* constitute a "momentous change in law" warranting relief.  Shea Motion to Vacate at 3, ECF No. 153.  This motion is now ripe.  *See* Gov. Response, ECF No. 156; Shea Reply, ECF No. 159; *see also* Shea Notices of Supplemental Authority, ECF No. 160–61; Gov. Notice of Supplemental Authority, ECF No. 162.

## II.    LEGAL STANDARDS

"Federal Rule of Civil Procedure 60(b) permits a district court to grant relief from a final judgment in limited circumstances."  *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206 (2025).  The Rule lays out five "specific grounds upon which parties may seek such relief," as well as "a catchall provision that allows a district court to relieve a party from a final judgment for 'any other

2

reason that justifies relief.'"  *Id.* (quoting Fed. Rule Civ. Proc. 60(b)(6)).  Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances."  *Id.* at 212–13 (collecting cases).  "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors."  *Buck v. Davis*, 580 U.S. 100, 123 (2017).  But the bar for relief is formidable, and the D.C. Circuit "has emphasized that Rule 60(b)(6) should be only sparingly used."  *Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1120 (D.C. Cir. 2011) (cleaned up).

### III.  DISCUSSION

Shea seeks relief from the final judgment against him under Rule 60(b)(6) based on new developments in executive-branch policy following the change in presidential administration and the Supreme Court's recent decision in *Ames*.  But this Court is not persuaded that these events warrant reopening a nearly 13-year-old judgment.  As the Supreme Court reaffirmed just this past year, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."  *BLOM Bank SAL*, 605 U.S. at 216 (quoting *Agostini v. Felton*, 521 U.S. 203, 239 (1997)); *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (holding that a change in law typically does not warrant Rule 60(b)(6) relief when a district court's interpretation of the law "was by all appearances correct under the . . . Circuit's then-prevailing interpretation" since it's "hardly extraordinary" that the Supreme Court might eventually "arrive[] at a different interpretation"); *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (holding that "extraordinary circumstances are not present when . . . there has been an intervening change in case law" (internal quotation marks omitted)).

Citing out-of-circuit precedent, Shea argues that "the analysis for whether a change in law supports a 60(b)(6) motion in a given case may be quite complex, may involve factors that have not been seen before, or may involve factors that have not been seen before in the particular context

3

in which they appear in a given case." Shea Reply at 11–19.  And it is true that the Ninth Circuit has held that relief based on a "change in the law" depends on a "case-by-case inquiry" that captures "all of the relevant circumstances."  *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 445–46 (9th Cir. 2019).  Under Ninth Circuit precedent, district courts are "to 'intensively balance' all relevant factors, 'including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'"  *Id.* at 446 (quoting *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009)).

But the D.C. Circuit has not endorsed a similar test for determining whether a change in law may support a 60(b)(6) motion.  Rather, the D.C. Circuit has instead emphasized the Supreme Court's position that a change in law is very rarely an extraordinary circumstance unto itself.  *See Kramer*, 481 F.3d at 792; *BLOM Bank SAL*, 605 U.S. at 216.  Even assuming (momentarily) that Shea has identified intervening law directly applicable to this case, he offers no reason why this new precedent is at all extraordinary.  In other words, he does not explain why this change in law should be given special treatment with respect to reopening final judgments when, in the ordinary course of events, final judgments are not disturbed just because the caselaw on which they depended is overruled.  Simply put, his failure to describe what makes this case special forecloses relief under Rule 60(b)(6).

As for whether Shea has identified a truly intervening change in law, this Court is skeptical. Beginning with the Executive Orders, another session of this court has held that a change in discretionary executive-branch policy is *not* a "change in controlling law" for purposes of reopening a judgment.  *United States ex rel. Low v. President & Fellows of Harvard Coll.*, No. 23-cv-2521, 2026 WL 101341, at *2 (D.D.C. Jan. 14, 2026) (quoting *Hurst v. Fed. Nat'l Mortg. Ass'n*,

4

642 F. App'x 533, 542–43 (6th Cir. 2026)).  And much like the movant in *Low*, Shea cites no authority to the contrary.

As for the Supreme Court's recent decision in *Ames*, that case rejected the Sixth Circuit's "background circumstances" test for Title VII liability.  605 U.S. at 305–06.  But in Shea's case, the D.C. Circuit affirmed based on the Supreme Court's holdings in *Johnson* and *Weber*, without ever mentioning the background-circumstances test.  What's more, in disposing of this test, *Ames* did not cite, much less overrule, *Johnson* or *Weber*.

The *Johnson-Weber* precedents and the background-circumstances test both deal with reverse-discrimination claims under the three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  The test in *McDonnell Douglas* requires the plaintiff to establish that the employer took a protected characteristic into account in making an employment decision, at which point the burden shifts to the employer to articulate a nondiscriminatory rationale for the decision; if the employer makes this showing, then the plaintiff must prove that the justification given was pretextual.  *Id.* at 802–04.

While *Johnson* and *Weber* hold that affirmative-action plans provide a nondiscriminatory rationale for taking race or sex into account in making an employment decision, *Johnson*, 480 U.S. at 626, the background-circumstances test required that plaintiffs who are members of the majority group show that facts exist "to support the suspicion that the defendant is that unusual employer who discriminates against the majority," *Ames*, 605 U.S. at 309 (quoting *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023)).  So whereas the background-circumstances test imposed an "additional burden at step one" of the *McDonnell Douglas* framework, *id.*, the holdings of *Johnson* and *Weber* concern *step two* of that framework.  And in affirming the judgment in this case, the D.C. Circuit held that Shea had satisfied step one by establishing a prima facie case of

5

discrimination in violation of Title VII, *Shea*, 796 F.3d at 55, further supporting the inference that the background-circumstances test did not play a role in its analysis.

Because Shea relies primarily on *Ames* and the Executive Orders, this Court will not begin to consider how *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), which Shea mentions only in passing, may influence the law regarding affirmative action in the Title VII context going forward. It is enough to hold that *Ames* and the Executive Orders do not constitute intervening authority and, in any case, Shea has not established any extraordinary circumstances to warrant 60(b)(6) relief.

## IV.    CONCLUSION

For the foregoing reasons, Shea's motion to vacate the order granting summary judgment is **DENIED**.

Date: 2-2-26

Royce C. Lamberth
United States District Judge